UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT C. SMITH,

    Plaintiff,

  v.

CAROLINE HARDY, *et al.*,

    Defendants.

Case No. C06-5455 RBL/KLS

REPORT AND RECOMMENDATION

**Noted For: February 2, 2007**

This 42 U.S.C. § 1983 civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Before the Court is Plaintiff's motion for a temporary injunction.  (Dkt. # 18).  After carefully reviewing Plaintiff's motion, Defendants' response, and the parties' supporting declarations and exhibits, the Court submits the following report, recommending that Plaintiff's motion be denied.

**I. STATEMENT OF FACTS**

Plaintiff is a Washington State prison inmate currently incarcerated at Stafford Creek Corrections Center (SCCC).  On August 9, 2006, Plaintiff filed a Complaint alleging that his First and Fourteenth Amendment rights were violated when the mailroom rejected a piece of outgoing

REPORT AND RECOMMENDATION - 1

mail. Plaintiff now seeks preliminary injunctive relief to prevent SCCC staff from "the illegal detention of plaintiff's outgoing mail #14964." (Dkt. # 18).

On or about June 6, 2006, Plaintiff attempted to mail a letter to James Killgore, a non-immediate family member. (Dkt. # 26, ¶ 3, Exh. A). The letter in question is set forth in full as follows:

> Scott Smith
> 278891 FNC 23
> 191 Constantine Way
> Aberdeen WA 98520-9504
>
> James Killgore -
> Greetings and Good Health!
>
> Prodigal son has returned to the fold seeking spiritual encouragement with mature, understanding Christians due to need for closure of disheartening experiences and recent loss. Broken spirit of prisoner, serving time for a crime I did not commit, needs nurturing.
>
> In an unrelated matter, I sought assistance, by mail, for manuscript preparation, but oppressive prison guards prohibit solicitation of help.
>
> Writing/publishing would be a positive contribution as a legacy to my 8 year-old daughter, Michiko
>
> I am prohibited from requesting help so it must be done through prayer. Please pray with me in this matter.
>
> Please do not refer me to a desensitized prison ministry.
>
> You and yours are in my prayers.
>
> Thank you for genuinely listening and for your generous kindness.
>
> Grace, mercy and peace.
>
> Humbly –
>
> Scott

(Dkt. # 26 at ¶ 7, Exh. A).

REPORT AND RECOMMENDATION - 2

The mailroom sergeant rejected the letter and issued mail rejection # 14964. (Id. at ¶ 4). On June 7, 2006, Plaintiff was notified of a mail rejection due to improper solicitation of goods or money contrary to DOC Policy. (Id. at ¶ 8, Exh. B). Plaintiff appealed the first level rejection of the letter, the violation of DOC Policy No. 450.100, Section VI, paragraph A(b), which prohibits the solicitation of goods or money from other than the immediate family of the offender without the prior permission of the Superintendent. (Id. at ¶ 9). Section VI of DOC Policy No. 450.100 provides that outgoing mail may be disapproved for the following reason:

> The *mail* solicits goods or money from other than the *immediate family* of the offenders without the prior permission of the Superintendent. This provision may not be construed to preclude the purchase of non-*contraband* goods or payment for such goods which have been approved by the Superintendent/ designee.

(Id. at ¶ 9, Exh. C).

On July 6, 2006, the first level violation was upheld and Plaintiff was advised via written notice that his appeal was rejected. (Id. at ¶ 10, Exh. D).

## II. STANDARD OF REVIEW

Under the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA), Plaintiff is not entitled to prospective relief unless the court enters the necessary findings required by the Act:

> The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

In civil rights cases, injunctions must be granted sparingly and only in clear and plain cases.

REPORT AND RECOMMENDATION - 3

Rizzo v. Goode, 423 U.S. 362, 378 (1976).   The purpose of a preliminary injunction is to preserve the status quo between the parties pending a final determination on the merits. Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Chalk v. United States Dist. Ct., 840 F.2d 701, 704 (9th Cir. 1988).   It is appropriate to grant in a preliminary injunction "intermediate relief of the same character as that which may be granted finally." De Beers Consol. Mines v. U.S., 325 U.S. 212, 220 (1945); Kaimowitz v. Orlando, 122 F.3d 41, 43 (11th Cir. 1997).

In order to justify the extraordinary measure of injunctive relief under Federal Rule of Civil Procedure 65, the moving party bears a heavy burden. Canal Authority of the State of Florida v. Callaway, 489 F.2d 567 (5th Cir. 1974). A party seeking a preliminary injunction must fulfill one of two standards: the "traditional" or the "alternative." Johnson v. California State Bd. Of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995); Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987). Although two tests are recognized, they are not totally distinct tests. Rather, they are "extremes of a single continuum." Funds for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992).

Under the traditional standard, a court may issue preliminary relief if it finds that: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. Cassim, 824 F.2d at 795. Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. Id. at 795. Under either test, Plaintiff fails to carry his burden to obtain preliminary injunctive relief in this case.

REPORT AND RECOMMENDATION - 4

## III.  DISCUSSION

**A.  Plaintiff Has Not Shown That He Will Suffer Irreparable Injury**

Plaintiff argues that he has demonstrated irreparable injury by showing a violation of his First Amendment Constitutional right.  (Dkt. # 25).  Plaintiff states in his declaration that he "properly mailed a letter to James Killgore. The letter did not violate any prison rules. The letter did not solicit goods or money. No valid reason existed for the interception of the letter."  (Dkt. # 18, Attach. 2 at 2).  Plaintiff provides no evidence to support these conclusory statements and fails to demonstrate any injury that he will suffer if the letter is not delivered.

Conversely, the evidence provided to the Court indicates that SCCC staff rejected Plaintiff's letter because it improperly solicited goods or money from a non immediate family member contrary to Section VI of DOC policy No. 450,100.   Plaintiff references the solicitation prohibition, yet still suggests that the recipient provide assistance with writing/publishing:

> In an unrelated matter, I sought assistance, by mail, for manuscript preparation, but oppressive prison guards prohibit solicitation of help. Writing/publishing would be a positive contribution as a legacy to my 8 year-old daughter, Michiko.

(Dkt. # 26, Exh. A).  The Court finds that it is reasonable to conclude that the mailroom staff had a valid reason to intercept the letter for violation of DOC policy.

Because Plaintiff has failed to provide evidence to support his claim of irreparable harm due to a First Amendment violation, the Court recommends that his motion for preliminary injunction be denied.

**B.  Plaintiff Has Not Shown That He Is Likely To Succeed On the Merits Of His Case**

Plaintiff argues that his right to outgoing mail is significantly greater than his right to incoming mail and that outgoing personal correspondence does not, by its nature, pose as serious a threat to prison order and security, as does incoming correspondence.

REPORT AND RECOMMENDATION - 5

Defendants respond that the mailroom properly rejected the letter because it improperly solicited goods or money from a non immediate family member contrary to DOC policy. Defendants argue further that prison officials have a legitimate penological interest in inspecting an inmate's outgoing mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Regulation of both incoming and outgoing mail is justified to prevent criminal activity and to maintain prison security. O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir. 1996).

Prison officials may justifiably censor out-going mail containing information about proposed criminal activity and may also visually inspect out-going mail to determine whether it contains contraband material which threatens prison security or material threatening the safety of the recipient. *See* Procunier v. Martinez, 416 U.S. 396, 413 (1974); Witherow, 52 F.3d at 266. Additionally, the DOC mail policy "authorizes the inspection and reading of incoming and outgoing mail by qualified members of the facility staff. The inspection shall serve to prevent offenders from receiving or sending contraband, or any other material that threatens to undermine the security and order of the facility, through the mail; and to prevent criminal activity." (Dkt. # 26, Exh. D).

The mailroom inspected and rejected Plaintiff's outgoing mail to prevent the solicitation of goods without prior permission. (Id.). As DOC policy contemplates, unchecked mail solicitation could lead to the importation of contraband or the promotion of criminal activity both within and without the facility. If an inmate wishes to solicit goods or money from a non immediate family member then it is appropriate for the inmate to clear the request with the Superintendent to ensure that the request is necessary and legitimate and does not pose a threat to institutional security. (Id., Exh. D, DOC Policy Directive 450.100(VI)(A)(6)).

The Court finds that SCCC staff had a legitimate penological interest in inspecting and rejecting Plaintiff's letter. Prison officials have an obvious security interest in reviewing and issuing

REPORT AND RECOMMENDATION - 6

prior approval of any mail that may constitute solicitation.  Although Plaintiff states that he did "not violate any prison rules," and that his letter did "not solicit goods or money," review of the letter demonstrates that Plaintiff was aware of the solicitation prohibition and was attempting solicitation. (Id., Exh. A).  Thus, Plaintiff cannot show a likelihood of prevailing on his First Amendment claim and the Court recommends that his motion for injunctive relief be denied.

**C.    Plaintiff Has Not Shown That the Balance Of Potential Harm Favors The Moving Party Or That the Public Interest Favors Granting Relief**

The potential harm alleged by Plaintiff is the continuing scrutiny of his outgoing mail and the arbitrary and capricious restriction of his outgoing mail.  (Dkt. # 18, Exh. 1, p. 8).

Defendants argue that the potential harm to Defendants of unchecked mail solicitation by inmates is enormous.  If Defendants were enjoined from enforcing DOC mail restriction policies, institutional security could be gravely threatened by an influx of contraband.  Defendants note further that Plaintiff is not prohibited from sending a solicitation letter to a non-immediate family member, but that he need only do so in accordance with DOC policy and seek prior permission from the Superintendent or his designee.

Prison staff has a legitimate penological interest in inspecting an inmate's outgoing mail. Witherow, 52 F.3d at 265.  In addition, Defendants have shown that SCCC mailroom staff inspects and restricts outgoing inmate mail according to the clearly enumerated policy requirements of DOC Policy Directive 450.100 and not in an arbitrary and capricious manner.  The Plaintiff has not shown that his interest in having this letter sent outweighs the prison's interest in maintaining safety and security in its prisons.  Accordingly, Plaintiff's request for preliminary injunction should be denied.

**D.    Public Interest Favors Defendants**

REPORT AND RECOMMENDATION - 7

As noted above, it is in the public's interest to be free from unchecked solicitation by prison inmates who may seek contraband or to engage in criminal activity while incarcerated. Thus, the Court finds that it is in the public interest to have prison officials visually inspecting out-going mail to determine whether it contains contraband material which threatens prison security or contains material threatening the safety of the recipient. This factor also weighs against Plaintiff's request for preliminary injunction and therefore, it should be denied.

### IV.  CONCLUSION

The Court recommends that Plaintiff's motion for preliminary injunction (Dkt. # 18) be **DENIED.** A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 2, 2007**, as noted in the caption.

DATED this 4th day of January, 2007.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8