UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT C. SMITH,

    Plaintiff,

v.

CAROLINE HARDY, *et al*.,

    Defendants.

Case No. C06-5455 RBL/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:**
**MAY 18, 2007**

    This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff is a Washington State prison inmate currently incarcerated at Stafford Creek Corrections Center (SCCC). Plaintiff alleges that Defendants violated his First and Fourteenth Amendment rights when they rejected a piece of his outgoing mail. Presently before the Court is Plaintiff's motion for partial summary judgment against Defendant Hardy. (Dkt. # 31).

    Defendants Caroline Hardy, Charles Jones, Doug Waddington, and Ruben Cedeno cross-move for summary judgment (Dkt. # 33) and oppose Plaintiff's Motion for Summary Judgment (Dkt. # 35). The parties agree that there are no factual disputes regarding Plaintiff's attempt to mail the letter or the contents of the letter; they dispute only whether Defendants' rejection of Plaintiff's mail violated his constitutional rights.

REPORT AND RECOMMENDATION- 1

# I. STATEMENT OF FACTS

On or about June 6, 2006, Plaintiff attempted to mail a letter to James Killgore, a non-immediate family member. (Dkt. # 26, ¶ 3, Exh. A). The letter in question is set forth in full as follows:

> Scott Smith
> 278891 FNC 23
> 191 Constantine Way
> Aberdeen WA 98520-9504
>
> James Killgore -
> Greetings and Good Health!
>
> Prodigal son has returned to the fold seeking spiritual encouragement with mature, understanding Christians due to need for closure of disheartening experiences and recent loss. Broken spirit of prisoner, serving time for a crime I did not commit, needs nurturing.
>
> In an unrelated matter, I sought assistance, by mail, for manuscript preparation, but oppressive prison guards prohibit solicitation of help.
>
> Writing/publishing would be a positive contribution as a legacy to my 8 year-old daughter, Michiko
>
> I am prohibited from requesting help so it must be done through prayer. Please pray with me in this matter.
>
> Please do not refer me to a desensitized prison ministry.
>
> You and yours are in my prayers.
>
> Thank you for genuinely listening and for your generous kindness.
>
> Grace, mercy and peace.
>
> Humbly –
>
> Scott

(Dkt. # 26 at ¶ 7, Exh. A).

The mailroom sergeant rejected the letter and issued mail rejection # 14964. (*Id*. at ¶ 4). On June 7, 2006, Plaintiff was notified of a mail rejection due to improper solicitation of goods or money contrary to DOC Policy. (*Id*. at ¶ 8, Exh. B). Plaintiff appealed the first level rejection of the letter, the violation of DOC Policy No. 450.100, Section VI, paragraph A(b), which prohibits the solicitation of goods or money from other than the immediate family of the offender without the

REPORT AND RECOMMENDATION- 2

prior permission of the Superintendent. (*Id*. at ¶ 9). Section VI of DOC Policy No. 450.100 provides that outgoing mail may be disapproved for the following reason:

> The *mail* solicits goods or money from other than the *immediate family* of the offenders without the prior permission of the Superintendent. This provision may not be construed to preclude the purchase of non-*contraband* goods or payment for such goods which have been approved by the Superintendent/ designee.

(*Id*. at ¶ 9, Exh. C).

On July 6, 2006, the first level violation was upheld and Plaintiff was advised via written notice that his appeal was rejected. (*Id*. at ¶ 10, Exh. D).

After filing his Complaint, Plaintiff moved this Court for a preliminary injunction to prevent SCCC staff from "the illegal detention of plaintiff's outgoing mail #14964." (Dkt. # 18). In recommending denial of Plaintiff's motion, the undersigned specifically noted that:

> SCCC staff had a legitimate penological interest in inspecting and rejecting Plaintiff's letter. Prison officials have an obvious security interest in reviewing and issuing prior approval of any mail that may constitute solicitation. Although Plaintiff states that he did "not violate any prison rules," and that his letter did "not solicit goods or money," review of the letter demonstrates that Plaintiff was aware of the solicitation prohibition and was attempting solicitation.

(Dkt. # 27 at 6-7). The District Court entered an Order adopting the Report and Recommendation on February 6, 2007. (Dkt. # 30).

Plaintiff maintains that Defendant Hardy intercepted his mail for no good reason and that his letter does not improperly solicit goods or money. (Dkt. # 32 at 2). Therefore, Plaintiff argues, he is entitled to summary judgment against Defendant Hardy as a matter of law. Defendants maintain that mailroom staff properly inspected and rejected Plaintiff's outgoing mail to prevent the solicitation of goods without prior permission pursuant to DOC policy.

## II. DISCUSSION

**A.     Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

REPORT AND RECOMMENDATION- 3

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*, 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. *Id.*

**B.    Plaintiff Has Failed to State A Claim In Violation of 42 U.S.C. § 1983 And Defendants Are Entitled to Summary Judgment As A Matter Of Law**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v.*

REPORT AND RECOMMENDATION- 4

*Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law". *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

Prison officials have a legitimate penological interest in inspecting an inmate's outgoing mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Regulation of both incoming and outgoing mail is justified to prevent criminal activity and to maintain prison security. *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996). Regulations limiting an inmate's outgoing mail should be generally necessary to address a legitimate governmental interest. *Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989) (citing *Procunier v. Martinez*, 416 U.S. 396, 414 (1974)). Regulations affecting outgoing prisoner mail are justified if they further the important governmental interests of security, order, or rehabilitation. *Procunier*, 416 U.S. at 413.

The DOC mail policy "authorizes the inspection and reading of incoming and outgoing mail by qualified members of the facility staff. The inspection shall serve to prevent offenders from receiving or sending contraband, or any other material that threatens to undermine the security and order of the facility, through the *mail*; and to prevent criminal activity." (Dkt. # 26, Exh. C - DOC Policy Directive 450.100 (III)(A)). Defendants maintain that in this case, mailroom staff properly inspected and rejected Plaintiff's outgoing mail to prevent the solicitation of goods without prior permission, pursuant to DOC Policy Directive 450.100(VI)(A)(6). (*Id.*, Exh. C).

Defendants argue that prison officials have an obvious security interest in reviewing and issuing prior approval of any mail that may constitute solicitation. As DOC policy contemplates, unchecked mail solicitation could lead to the importation of contraband or the promotion of criminal activity both within and without the facility. If an inmate wishes to solicit goods or money from a non immediate family member, it is appropriate for the inmate to clear the request with the Superintendent to ensure that the request is necessary and legitimate and does not pose a threat to

REPORT AND RECOMMENDATION- 5

institutional security. (*Id.*, Exh. D).  This regulation on unchecked solicitation is "generally necessary" to preserving institutional security. *See Thornburgh*, 490 U.S. at 411.

Defendants suggest that review of the letter demonstrates why mailroom staff were concerned that Plaintiff was attempting improper solicitation:

> In an unrelated matter, I sought assistance, by mail, for manuscript preparation, but oppressive prison guards prohibit solicitation of help. Writing/publishing would be a positive contribution as a legacy to my 8 year-old daughter, Michiko.

(Dkt. # 26, Exh. A).  Thus, although Plaintiff indicates his awareness of the solicitation prohibition he still suggests that the recipient provide assistance with writing/publishing.

Plaintiff argues that Defendant Hardy's rejection of his letter serves no important governmental interest such as security, order or rehabilitation and that his letter does not solicit goods or money.  (Dkt. # 32 at 4).  Alternatively, Plaintiff argues that DOC policy allows prisoners to solicit, from non-family members, books, magazines, educational materials, religious materials, bible study lessons, correspondence courses, gift clothing packages, prayers, legal assistance, etc. (*Id.* at 5).  Plaintiff also argues that Defendant Hardy arbitrarily and capriciously applied the policy to Plaintiff alone.  (*Id.*).  Plaintiff relies on *Crofton v. Roe*, 170 F.3d 957 (9th Cir. 1999) for the proposition that DOC policy allows him to solicit goods and money from non-family members through the mail or internet.

The Ninth Circuit in *Crofton* found that a prison regulation prohibiting the receipt by prisoners of any book, magazine or other publication unless the prisoners ordered the publication from the publisher and paid for it out of their own prison account violated the First Amendment absent a showing that the regulation was reasonably related to a valid penological objective. *Crofton*, 170 F.3d at 959-960.  *Crofton* does not stand for the broad proposition asserted by Plaintiff, but merely reiterates the rule that a regulation must be reasonably related to a legitimate penological interest.  *Id*.citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). [1]  In *Crofton*, the

---

[1] The *Turner* factors include: (1) existence of a rational relationship between the regulation and the proffered legitimate governmental interest; (2) an available alternative means of exercising inmates' asserted rights; (3) affect on guards, other inmates and allocation of prison resources for

REPORT AND RECOMMENDATION- 6

prison officials' claim that the regulation inhibited contraband and strong-arming was not sufficient to withstand such a broad prohibition.

In this case, there is no blanket prohibition such as the Court in *Crofton* reviewed. Rather, the DOC policy merely requires Plaintiff to first clear his request with the Superintendent to ensure that his request is necessary and legitimate and does not pose a threat to institutional security. The Court finds that the regulation on unchecked solicitation does not unnecessarily burden Plaintiff's rights under the First or Fourteenth Amendments. In addition, and viewing the contents of the letter in the light most favorable to Plaintiff, the undersigned concludes that the mailroom staff had valid reason to intercept Plaintiff's letter for violation of DOC policy. Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment against Defendant Hardy be denied and Defendants' cross-motion for summary judgment be granted.

**C.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**.

Defendants urge that they are, in any event, entitled to qualified immunity from the claims of Plaintiff. As the Court has determined that Plaintiff has failed to allege a deprivation of an actual constitutional right, the issue of qualified immunity need not be reached. *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

### III. CONCLUSION

For the reasons stated above the Court should **DENY** Plaintiff's motion for summary judgment and **GRANT** Defendants' cross-motion for summary judgment and dismiss Plaintiff's claims. A

---

accommodating the asserted constitutional right; and (4) whether the prison can easily serve its interests with alternative means without infringing upon the rights of prisoners. *Turner*, 482 U.S. at 90.

REPORT AND RECOMMENDATION- 7

proposed order accompanies this Report and Recommendation.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 18, 2007**, as noted in the caption.

DATED this 17th day of April, 2007.

*[signature]*

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 8